**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| BERNARD JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:04-cv-1705-SEB-VSS |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Complaint for Judicial Review**

Bernard Johnson ("Johnson") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded** for further proceedings.

## I.  BACKGROUND

Johnson applied for DIB on April 4, 2001, alleging an onset date of June 7, 2000. His application was denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on October 28, 2002.  Johnson was present, accompanied by his attorney. Medical and other records were introduced into evidence, and Johnson, his wife, and a vocational expert testified.

The ALJ denied Johnson's application on November 18, 2002.  On August 20, 2004, the Appeals Council denied Johnson's request for review of the ALJ's decision, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed.  The court has jurisdiction over Johnson's complaint pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Johnson met the disability insured status requirements of the Act on June 7, 2000, the date he stated he became unable to work, and continued to meet them through the date of the ALJ's decision; (2) Johnson had not engaged in substantial gainful activity since June 7, 2000; (3) the medical evidence established that Johnson had severe degenerative disc disease, fibromyalgia, and depression, but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4; (4) Johnson's testimony as to the extent of his limitations was not entirely credible; (5) Johnson had the residual functional capacity ("RFC") to perform the physical exertion and nonexertional requirements of light work with the following restrictions: ability to alternate into a sitting or standing position at option for periods of one to two minutes per hour; no more than occasional bending, squatting, or climbing of stairs or ramps; no kneeling, crawling, or climbing of ropes, ladders, or scaffolds; no walking on uneven surfaces, working at unprotected heights, around dangerous moving machinery, or operating a motor vehicle (or being around open flames or large bodies of water); only simple and repetitive tasks, with no more than superficial interaction with the public, co-workers, and supervisors; (6) Johnson was unable to perform his past relevant work as a press metal worker; (7) Johnson's RFC for the full range of light work was reduced by the above cited restrictions; (8) Johnson was 50 years old, which is defined as closely approaching advanced age, and had a 12th grade education; (9) Johnson did not have any acquired work skills which were transferable to the skilled or semiskilled work functions of other work; (10) based on an exertional capacity for light work and Johnson's age, education and work experience, section 404.1569 and Rule 202.13, Table No. 2, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled;" and (11) although Johnson's additional nonexertional limitations did not allow him to perform the full range of light work, using the above cited rule as a framework for decision-making, there were a significant number of jobs in the State economy which he could perform, including assembler (10,000 light, 5,000 sedentary), machine operator (6,000 light, 600 sedentary), inspector (4,000 light, 500 sedentary), and hand packer (500 light, 3,000 sedentary). With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Johnson had not been disabled within the meaning of the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.   Analysis

The ALJ determined that Johnson had severe degenerative disc disease, fibromyalgia, and depression, but that he could perform some light work with certain restrictions. Johnson argues that the ALJ's RFC determination is not supported by substantial evidence. More specifically, Johnson contends that the ALJ improperly weighed the opinion of his treating physician, improperly evaluated his fibromyalgia and his mental impairment, and failed to obtain an updated expert medical opinion as to Listing equivalency.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford v.Apfel,* 227 F.3d 863, 870 (7th Cir.2000) (citing 20 C.F.R. § 404.1527(d)(2)).  If an ALJ decides to reject medical evidence offered by a treating physician, he must provide good reasons for his decision. *See Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir.1992) ("The ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability.").

The ALJ acknowledged that treating physician Dr. Ryan opined that Johnson could sit for eight hours, and stand/walk for 3/4 of an hour each in an eight hour day, he could carry/lift up to fifty pounds occasionally, and should do no squatting, kneeling, crawling or climbing. (R. at 22, 80-82).  The ALJ further acknowledged that Dr. Ryan opined that

Johnson was completely disabled and unable to work and that the bases of his opinions were clinical observations and Johnson's subjective complaints. *Id.*[1]

Johnson points out that the ALJ failed to mention Dr. Ryan's opinion that Johnson could not use his hands for simple grasping, pushing and pulling of arm controls, or fine manipulation and that Johnson could not use feet for repetitive movements such as operating leg controls. (R. at 81). In her response, the Commissioner recites every portion of Dr. Ryan's opinion except these sections, and she fails to address Johnson's argument in this regard. Of particular significance is the fact that during the hearing, the vocational expert was asked whether an individual who was unable to use his hands either for simple grasping or for pushing and pulling or arm controls or for fine manipulation would be able to perform the jobs that she had given in response to the ALJ's hypothetical. (R. at 78). The vocational expert responded that given those additional restrictions, all of the jobs would be eliminated. *Id.* The ALJ concluded that Johnson could perform simple and repetitive tasks. (R. at 19, 24). Because the ALJ failed to discuss this dispositive vocational testimony in relation to that portion of Dr. Ryan's report, his conclusions that Johnson could perform simple and repetitive tasks and could perform a significant number of jobs are not supported by substantial evidence.

In addition, the ALJ gave "little weight" to Dr. Ryan's evaluation because he thought it was "inconsistent in itself in indicating the claimant is capable of sedentary to light work then stating he is totally unable to work." (R. at 23). The ALJ further noted that Dr. Ryan's opinion was "supported only by clinical observation and the claimant's subjective complaints." *Id.* Johnson is persuasive in arguing that Dr. Ryan's opinion is not, in fact, internally inconsistent because given all of Johnson's limitations and the vocational expert's testimony, Johnson was precluded from performing all work. In addition, Dr. Ryan lists Johnson's diagnosis as fibromyalgia, and as such, to the extent the ALJ rejected Dr. Ryan's opinion because he did not list objective medical evidence in support thereof, the Seventh Circuit has emphasized that the symptoms of fibromyalgia are "entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir.1996). The ALJ's rejection of the opinion by treating physician Dr. Ryan is not supported by substantial evidence.

In addition, the ALJ credited Johnson's subjective complaints "only to the extent that they are reasonably consistent with the objective medical evidence and other evidence of record." (R. at 23). Given the primary diagnosis of fibromyalgia, the ALJ's remark that "there is no evidence in the record to indicate the necessity for such a [very sedentary] lifestyle," *id.*, is not supported by substantial evidence. The ALJ's credibility assessment is thereby flawed. *See Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) ("Medical science confirms that pain can be severe and disabling even in the absence of 'objective' medical findings.... And so once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.") (internal quotation omitted). *See also Sarchet*, 78 F.3d at 306.

---

[1] Dr. Ryan further noted that Johnson's pain and fatigue limited his activities and severely restricted his ability to perform nonexertional functions. (R. at 81-82).

4

The ALJ relied in large part on the opinion of State Agency physicians who were not examining physicians and who last reviewed the record ten months before evidence was submitted at the hearing. (R. at 23) ("the State Agency's evaluation is, with some additional restrictions, is [sic] credited and adopted herein."). Johnson argues that because the State Agency review was incomplete and because no medical expert was present at the hearing, the ALJ improperly "played doctor" in determining whether Johnson was entitled to disability benefits. Rather than scrutinize the extent of the record which was not reviewed by a medical source in an attempt to determine the extent to which the State Agency review may have been incomplete, in light of the need to remand the case as discussed above, on remand the ALJ shall ensure that the entire record is reviewed either by the State Agency physicians or by a medical expert at the time of a new hearing, or both.

Finally, the court finds no error in the ALJ's evaluation of Johnson's mental impairment. The ALJ adequately discussed the evidence of record which reflected that Johnson's mental impairment did not meet Listing 12.04 and indicated only mild limitations in function.

### III. CONCLUSION

An ALJ's "decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). For the reasons described, the ALJ's decision is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 03/03/2006

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana